**Appeal No. 2023-2274**

# United States Court of Appeals
# For The Federal Circuit

TARGET CORPORATION,

*Plaintiff-Appellant*,

—v.—

UNITED STATES,

*Defendant-Appellee.*

Appeal from the United States Court of International Trade
In Case No. 21-00162, Judge Leo M. Gordon

## BRIEF FOR DEFENDANT-APPELLEE, UNITED STATES

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

PATRICIA M. MCCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

ALEXANDER VANDERWEIDE
Senior Trial Counsel
U.S. Dept. of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Tel. No. (212) 264-9230 or 0482

*Attorneys for Defendant-Appellee*

*Of Counsel:*

EDWARD N. MAURER
Deputy Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

Dated: December 15, 2023

# **TABLE OF CONTENTS**

ISSUE PRESENTED ................................................................ 1

STATEMENT OF THE CASE .................................................. 1

  I.  *Home Products I* .......................................................... 2

  II.  Target's Action & The Trial Court's Decision............................ 7

SUMMARY OF ARGUMENT ................................................. 10

ARGUMENT ....................................................................... 11

  I.  STANDARD OF REVIEW ......................................... 11

  II.  THE TRIAL COURT'S EXERCISE OF ITS REMEDIAL POWERS TO ORDER RELIQUIDATION CONSISTENT WITH ITS PRIOR JUDGMENT ACCORDS WITH *CEMEX* ................................ 12

      A.  Target's Entries Did Not Deem Liquidate By Operation Of Law Pursuant To 19 U.S.C. § 1504(d) .................................... 15

      B.  19 U.S.C. § 1501 And § 1514(a) Do Not Preclude The Trial Court From Enforcing Its Judgments ................................ 16

      C.  The Trial Court's Reliquidation Order Effectuated The Terms Of 19 U.S.C. § 1516a And Was Necessary To Protect Its Judgment ......... 22

      D.  The Trial Court's Holding Is Consistent With The Analysis Of *Cemex* ................................................... 30

  III.  THE TRIAL COURT PROPERLY DISMISSED THIS ACTION FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED ......................................... 35

CONCLUSION ..................................................................... 39

# TABLE OF AUTHORITIES

**Cases**

*Agro Dutch Indus. Ltd. v. United States*,
    589 F.3d 1187 (Fed. Cir. 2009)......................................................... 27, 28, 29, 33

*AK Steel Corporation v. United States*,
    281 F. Supp. 2d 1318 (Ct. Int'l Trade 2003) ........................................................27

*Am. Signature, Inc. v. United States*,
    598 F.3d 816 (Fed. Cir. 2010)................................................................ 18, 29

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................ 12, 36

*Boise Cascade Corp. v. United States*,
    296 F.3d 1339 (Fed. Cir. 2002)..............................................................11

*Borlem S.A.-Empreedimentos Industriais v. United States*,
    913 F.2d 933 (Fed. Cir. 1990)................................................................23

*Browning v. Clinton*,
    292 F.3d 235 (D.C. Cir. 2002) .............................................................12

*Cemex, S.A. v. United States*,
    279 F. Supp. 2d 1357 (Ct. Int'l Trade 2003) .......................................................31

*Cemex, S.A. v. United States*,
    384 F.3d 1314 (Fed. Cir. 2004).................................................................... *passim*

*Dehne v. United States*,
    970 F.2d 890 (Fed. Cir. 1992)................................................................11

*Heartland By-Prod., Inc. v. United States*,
    424 F.3d 1244 (Fed. Cir. 2005)..............................................................25

*Home Prods. Int'l, Inc. v. United States*,
  405 F. Supp. 3d 1368 (Ct. Int'l Trade 2019) .............................................. *passim*

*Home Prods. Int'l, Inc. v. United States*,
  846 Fed. Appx. 890 (Fed. Cir. 2021) .......................................................... *passim*

*LG Electronics U.S.A., Inc. v. United States*,
  991 F. Supp. 668 (Ct. Int'l Trade 1997) .............................................................27

*Marbury v. Madison*,
  5 U.S. 137 (1803) ...............................................................................................27

*Papasan v. Allain*,
  478 U.S. 265 (1986) ...........................................................................................36

*Peacock v. Thomas*,
  516 U.S. 349 (1996) ..................................................................................... 24, 25

*Shinyei Corp. v. United States*,
  355 F.3d 1297 (Fed. Cir. 2004) .........................................................................29

*SSAB North American Div. v. U.S. Bureau of Customs and Border Protection*,
  571 F. Supp. 2d 1347 (Ct. Int'l Trade 2008) ............................................... 18, 19

*Target Corp. v. United States*,
  647 F. Supp. 3d 1373 (Ct. Int'l Trade July 20, 2023).........................................1

*United Pac. Ins. Co. v. United States*,
  464 F.3d 1325 (Fed. Cir. 2006).................................................................. 11, 12, 37

*United States v. Hanover Ins. Co.*,
  82 F.3d 1052 (Fed. Cir. 1996).............................................................................24

## Statutes

19 U.S.C. § 1501 ................................................................................... *passim*

19 U.S.C. § 1504(d) ................................................................ 9, 13, 14, 15, 17

19 U.S.C. § 1514 ........................................................................... *passim*

19 U.S.C. § 1514(a) ...................................................................... *passim*

19 U.S.C. § 1514(b) ............................................................................29

19 U.S.C. § 1516a ....................................................... 6, 20, 22, 25, 29

19 U.S.C. § 1516a(c)(2) .....................................................................26

19 U.S.C. § 1516a(e) ........................................................... 26, 28, 29

19 U.S.C. § 1516a(e)(2) ................................................................ *passim*

28 U.S.C. § 1581(a) ...........................................................................35

28 U.S.C. § 1581(c) .............................................................................3

28 U.S.C. § 1585 .......................................................... 10, 23, 25, 33

28 U.S.C. § 2643 .............................................................. 10, 25, 33

28 U.S.C. § 2643(c)(1) ......................................................................24

Continued Dumping and Subsidy Offset Act of 2000 (CDSOA) ............................3

**Rules**

USCIT Rule 12(b)(6) ..................................................................... 8, 11

USCIT Rule 71.....................................................................................37

**Regulations**

*Floor-Standing, Metal-Top Ironing Tables and Certain Parts Thereof from the People's Republic of China,* 69 Fed. Reg. 47,868 (Dep't of Commerce Aug. 6, 2004)... .......................................................................2, 3

*Floor-Standing, Metal-Top Ironing Tables and Certain Parts Thereof from the People's Republic of China,* 72 Fed. Reg. 13,239 (Dep't of Commerce Mar. 21, 2007), *amended by* 72 Fed. Reg. 19,689 (Dep't of Commerce Apr. 19, 2007)... ....................................................................................................2

*Floor-Standing, Metal-Top Ironing Tables and Certain Parts Thereof from the People's Republic of China,* 82 Fed. Reg. 1,322 (Dep't of Commerce Jan. 5, 2017).... ...............................................................................................4

## <u>STATEMENT PURSUANT TO RULE 47.5</u>

In accordance with Rule 47.5 of the Rules of the United States Court of Appeals for the Federal Circuit, counsel for defendant-appellee makes the following statements:

(1) This appeal arises from litigation that began with *Home Prods. Int'l, Inc. v. United States*, 405 F. Supp. 3d 1368 (Ct. Int'l Trade 2019), and was the subject of plaintiff-appellant's nonparty appeal to this Court in *Home Prods. Int'l, Inc. v. United States*, 846 Fed. Appx. 890 (Fed. Cir. 2021) (Court No. 2020-1202).  That appeal was decided and dismissed on February 16, 2021.

(2) We are not aware of any cases known to counsel to be pending in this or any other tribunal that will directly affect or be directly affected by this Court's decision in the pending case.

2023-2274

---

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

---

TARGET CORPORATION,
*Plaintiff-Appellant*

v.

UNITED STATES,
*Defendant-Appellee*

---

Appeal from the United States Court of International Trade
in case no. 21-00162, Judge Leo M. Gordon

---

## BRIEF FOR DEFENDANT-APPELLEE, UNITED STATES

### ISSUE PRESENTED

Whether the United States Court of International Trade correctly dismissed this action for failure to state a claim upon which relief may be granted, and entered judgment accordingly.

### STATEMENT OF THE CASE

In bringing this appeal, plaintiff-appellant, Target Corporation (Target) seeks to reverse not only the trial court's decision in the present action, *Target Corp. v. United States*, 647 F. Supp. 3d 1373 (Ct. Int'l Trade July 20, 2023), but also to revisit and reverse the trial court's decision in *Home Prods. Int'l, Inc. v.*

*United States*, 405 F. Supp. 3d 1368 (Ct. Int'l Trade 2019) (*Home Products I*),

*appeal dismissed, Home Prods. Int'l, Inc. v. United States*, 846 Fed. Appx. 890

(Fed. Cir. 2021) (*Home Products II*), and award Target relief foreclosed by both

decisions.  Appx29.  We discuss each decision below to present a comprehensive

history of Target's efforts to unwind both court-ordered judgments in order to

secure a windfall for itself.

## I.    *Home Products I*

*Home Products I* concerned a challenge to the final results issued by the

Department of Commerce (Commerce) in connection with the first administrative

review of the antidumping duty order regarding ironing tables from China.  *Floor-*

*Standing, Metal-Top Ironing Tables and Certain Parts Thereof from the People's*

*Republic of China*, 72 Fed. Reg. 13,239 (Dep't of Commerce Mar. 21, 2007) (final

admin. review), *amended by* 72 Fed. Reg. 19,689 (Dep't of Commerce Apr. 19,

2007).

During the first review period, imports of ironing tables from Since

Hardware (Guangzhou) Co., Ltd. (Since Hardware), a Chinese producer and

exporter of ironing tables, were entered at an antidumping duty deposit rate of 9.47

percent.  *Floor-Standing, Metal-Top Ironing Tables and Certain Parts Thereof*

*from the People's Republic of China*, 69 Fed. Reg. 47,868 (Dep't of Commerce

2

Aug. 6, 2004) (am. final determ.).  When the review was completed and amended in April 2007, Commerce changed the antidumping duty rate for Since Hardware to 0.45 percent, which Since Hardware and Home Products International, Inc., (HPI), an affected domestic producer under the Continued Dumping and Subsidy Offset Act of 2000 (CDSOA), challenged in the trial court under the jurisdictional provision of 28 U.S.C. § 1581(c).  *See* Consolidated Court No. 07-00123 in the Court of International Trade (CIT).  Prior to consolidation, the trial court granted a consent motion for a preliminary injunction, prohibiting the liquidation of subject entries before a final decision on the merits.  Appx2.

After nearly a decade of litigation, on December 8, 2016, the trial court issued a final judgment consistent with a Stipulation for Entry of Judgment filed by all parties—HPI, Since Hardware, and the Government.  Appx2.  The judgment directed Commerce to, among other things, (1) amend its final results and set the final weighted-average dumping margin for ironing tables produced or exported by Since Hardware at 72.29 percent, and (2) instruct U.S. Customs and Border Protection (CBP) to liquidate the relevant entries at that rate.  *Id*.  The judgment also decreed that the preliminary injunction "shall be dissolved, and the covered entries be liquidated in accordance with this entry of judgment."  *Id*.

3

In accordance with the judgment, Commerce published amended final results in the Federal Register, *see Floor-Standing, Metal-Top Ironing Tables and Certain Parts Thereof from the People's Republic of China*, 82 Fed. Reg. 1,322 (Dep't of Commerce Jan. 5, 2017) (am. final results), and issued liquidation instructions to CBP in Message No. 7023304 (Jan. 23, 2017). ECF No. 171-2, CIT Court No. 07-00123. The Federal Register Notice and the liquidation instructions both explained that CBP should assess antidumping duties for the relevant entries at the rate of 72.29 percent. *Id*.

In March 2017, CBP liquidated hundreds of entries in accordance with Commerce's instructions and the trial court's judgment. *Home Products I*, 405 F. Supp. 3d at 1375. However, CBP also erroneously liquidated 224 entries—including 40 of Target's entries—and assessed antidumping duties at a rate of 9.47 percent (the cash deposit rate in effect at the time of entry), instead of at the ordered rate of 72.29 percent. *Id*. at 1368, 1371. In September 2017, HPI's counsel learned that certain entries were not liquidated properly, and informed counsel for the Government of the issue on October 4, 2017 (HPI's counsel had also conferred with CBP personnel regarding the error several days prior to that date). ECF No. 182, CIT Court No. 07-00123.

4

On October 20, 2017, the Government filed a status report with the trial court, advising it of the liquidation error.  Appx2-3, Appx14.  In the report, the Government explained that the 90-day period for CBP's voluntary reliquidation of the 224 entries under 19 U.S.C. § 1501 had passed, and that CBP was prepared to reliquidate the entries expeditiously in response to an order from the trial court instructing it to do so.  *Id.*

A week later, on October 27, 2017, the trial court entered an order directing that the 224 entries be reliquidated in accordance with its December 8, 2016 final judgment, *see* Appx2-3, which CBP then scheduled to be reliquidated on November 17, 2017.  *See Home Products II*, 846 Fed. Appx. at 891.

However, on November 9, 2017, Target—an importer of ironing tables from Since Hardware who had never appeared in the litigation before—filed several motions in an effort to prevent the court-ordered reliquidation, including motions to intervene, to stay implementation of the trial court's October 27, 2017 order, and to reconsider and vacate said order.  Appx3.  Shortly thereafter, on November 15, 2017, the trial court issued an order staying implementation of its reliquidation order of October 27, 2017 so that Target could address the issue of reliquidation.  ECF No. 181, CIT Court No. 07-00123.

5

Nearly two years later, on September 27, 2019—after receiving and considering additional briefing regarding reliquidation from Target, HPI, and the Government, and ultimately denying as moot Target's motions to intervene, and to stay, reconsider, and vacate the court's October 27, 2017 order—the trial court issued an affirmative injunction enforcing its final judgment, thereby directing the Government to reliquidate the 224 entries. *Home Products I*, 405 F. Supp. 3d at 1368, 1378.

In its decision, the *Home Products* court ruled that, since it had taken jurisdiction over the subject entries pursuant to 19 U.S.C. § 1516a, the court could enforce its prior judgment by correcting the erroneously liquidated entries. *Home Products I*, 405 F. Supp. 3d at 1372-74, 1377-78. In so ruling, the trial court declined to read *Cemex, S.A. v. United States*, 384 F.3d 1314 (Fed. Cir. 2004) (*Cemex*), as prohibiting the relief it had ordered because "…(1) [the Court of International Trade] has the power to enforce its judgments, (2) the principle of finality codified § 1514 is not a bar to correcting Customs' errors in liquidating subject entries covered by trade actions, and (3) whether the court corrects the liquidations and enforces the judgment depends on a weighing of equitable factors in each case." *Home Products I*, 405 F. Supp. 3d at 1377. In weighing these factors, the trial court found that HPI and the Government had taken reasonable

steps to inform the court of the erroneous liquidations once they were discovered by HPI's counsel, while Target had "remained silent upon receiving a fortuitous windfall when the erroneous liquidations [initially] occurred…" *Id*. at 1375-76. The trial court thus exercised its Article III powers and issued the affirmative injunction, concluding that "the equities do not favor Target…" *Id*. at 1376.[1]

In November 2019, in accordance with the trial court's September 27, 2019 decision, and consistent with the court's December 8, 2016 final judgment, CBP reliquidated all of the 224 subject entries, including Target's 40 entries at issue here.  Appx7.

## II.    Target's Action & The Trial Court's Decision

In the complaint filed by Target in the present action, Target asked the trial court to "reconsider its decision in *Home Products International, Inc., supra*, and reverse it."  Appx29.  Target also asked the court to "order a refund of the additional antidumping duties illegally collected with interest as provided by law." *Id*.

---

[1] Target appealed the trial court's September 27, 2019 decision, and although the parties briefed the merits of Target's appeal, this Court dismissed Target's nonparty appeal because it had "not established exceptional circumstances indicating the propriety of a nonparty appeal in this case." *Home Products II*, 846 Fed. Appx. at 895-96.

We moved to dismiss Target's action, pursuant to USCIT Rule 12(b)(6), for failure to state a claim upon which relief may be granted because Target's complaint raised only two claims, both of which the trial court had already considered when issuing its September 27, 2019 decision in *Home Products I*: the arguments that (1) 19 U.S.C. § 1514 and 19 U.S.C. § 1501 precluded the court from enforcing its judgment; and (2) the trial court's decision ran afoul of this Court's decision in *Cemex*.  In so alleging, Target asked the trial court to yet again repudiate its decision in *Home Products I* and bestow upon Target—in violation of the trial court's multiple orders—a windfall of so-called "illegally collected" duties that Target has never been entitled to.  By seeking relief that the trial court had already considered, rejected, and ordered otherwise in *Home Products I*, we requested the dismissal of Target's complaint as it presented no new factual considerations or legal arguments for the trial court to revisit its already considered, and reconsidered, decision in the concluded litigation.

In its opinion granting our motion to dismiss, the trial court, as an initial matter, agreed that a motion to dismiss for failure to state a claim upon which relief may be granted was the proper procedural vehicle to resolve this action because "the complaint presents no dispute about the material facts of this action, but merely [presents] a pure question of law…"  Appx11-12.

As to the merits of Target's claim that "Cemex is on all fours with this case," and thus "controls the result here," the trial court, like it previously did in *Home Products I*, distinguished *Cemex* from the case at hand, finding material differences in the actions of the respective domestic industries. Appx12. In particular, the trial court highlighted the domestic industry's belated pursual of the purportedly erroneous deemed liquidations in *Cemex* "some four years later[,]" as opposed to "the passage of a few months" in *Home Products*. Appx13. The trial court also stressed that, "{c}ritically, unlike the circumstances here, Cemex did not involve a violation of an affirmative injunction or a judgment." *Id*. And the trial court recognized that *Home Products* "involved actual liquidations, not deemed liquidations as in Cemex[,]" and as such, found that Target's "arguments regarding deemed liquidations under § 1504(d) are without merit." Appx13-14 (emphasis in original). Ultimately, the court concluded that "{r}eading Cemex as broadly as Plaintiff suggests would elevate the principle of finality found in § 1514 over the inherent power of the Court of International Trade under Article III of the United States Constitution. To do so would render this Court powerless to enforce its orders and judgments." Appx14.

The trial court also disagreed with Target that 19 U.S.C. § 1501 foreclosed the court-ordered reliquidation of the 224 entries that CBP had erroneously

liquidated, clarifying that section 1501 "merely limits the time within which

Customs may act <u>to voluntarily correct its own mistake</u>."  Appx15 (emphasis in

original).  The court noted that "{t}he statute on its face does not govern the

authority of the Court of International Trade to grant relief from an unlawful

liquidation derived from its jurisdiction over the entries underlying an action, as

well as its inherent powers as an Article III court."  *Id.*

    In furtherance of this point, the trial court concluded its decision by

emphasizing that "{t}he statutory scheme states plainly and unequivocally that this

Court has all powers in law and equity that are conferred on all Article III courts

under the Constitution[ ]" to enforce its own judgments.  Appx17 (*citing* 28 U.S.C.

§ 1585; 28 U.S.C. § 2643).  As a result, the court granted our motion to dismiss

Target's complaint for failure to state a claim upon which relief may be granted,

and entered judgment accordingly.  Appx18-19.

## SUMMARY OF ARGUMENT

    This Court should affirm the trial court's judgment dismissing this action

because, as the trial court reaffirmed in this case, the *Home Products I* court

properly exercised its remedial powers in issuing an affirmative injunction that

effectuated its prior judgment.  Target incorrectly concludes that *Cemex* prohibits

the trial court from doing so.  As the trial court found, the procedural facts present

10

in *Home Products I* and this action, and *Cemex*, are not analogous, which resulted in differing outcomes that were appropriate and justified in each action. Moreover, despite Target's protestations otherwise, neither *Cemex*, nor 19 U.S.C. §§ 1501 and 1514, precludes a trial court, such as the court in this action and *Home Products I*, from ordering reliquidation consistent with its final court decision. Without the inherent authority to do so, as the trial court soundly reasoned, an Article III court could not effectuate its judgment and abide by the terms of 19 U.S.C. § 1516a(e)(2). Finally, because Target's complaint in this action presented no disputed facts or legal grounds for relief beyond those already sought, considered, and rejected in *Home Products I*, Target's suit was properly dismissed for failure to state a claim upon which relief may be granted. Accordingly, we respectfully ask this Court to affirm the judgment of the trial court dismissing this action.

## **ARGUMENT**

### I.    **STANDARD OF REVIEW**

This Court reviews *de novo* dismissals by a trial court for failure to state a claim upon which relief may be granted. *See United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1328 (Fed. Cir. 2006) (citing *Boise Cascade Corp. v. United States*, 296 F.3d 1339, 1343 (Fed. Cir. 2002); *Dehne v. United States*, 970 F.2d 890, 892 (Fed. Cir. 1992)). A Rule 12(b)(6) motion to dismiss for failure to state a claim is

11

appropriate when the facts asserted by a plaintiff do not entitle it to a legal remedy. *See United Pac. Ins. Co.*, 464 F.3d at 1327 (citation omitted). The motion "tests the legal sufficiency of a complaint," *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002), which must be dismissed if it fails to present a legally cognizable right of action, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).

## II. THE TRIAL COURT'S EXERCISE OF ITS REMEDIAL POWERS TO ORDER RELIQUIDATION CONSISTENT WITH ITS PRIOR JUDGMENT ACCORDS WITH *CEMEX*

The main thrust of Target's appeal is that this Court's decision in *Cemex* forecloses the trial court in *Home Products I* from exercising its remedial power to order reliquidation consistent with its prior judgment.

Contrary to Target's claim, the trial court's issuance of an affirmative injunction to enforce its judgment in *Home Products I* is not at odds with the outcome in *Cemex*. As discussed throughout our brief, among other differences, *Cemex* involved erroneous deemed liquidations that occurred under circumstances distinct from what occurred in *Home Products*. These are not "irrelevant underlying facts," as Target dismissively contends, Blue Br. 12, but rather, undergird the respective legal analyses in each case, both of which involved considerations with necessarily different outcomes. Ultimately, *Cemex* is both

factually distinguishable from, and legally consistent with, the trial court's decision in this action and *Home Products I*, and thus, Target's attempts to revisit and reverse both decisions on account of *Cemex* must be rejected.

Broadly, *Cemex* involved a decision by CBP to retroactively treat certain entries as having been liquidated by operation of law, pursuant to 19 U.S.C. § 1504(d), even though the entries had not actually been liquidated in that manner. *Cemex*, 384 F.3d at 1321.  Section 1504(d) provides that CBP must liquidate entries at the applicable antidumping rate within six months after the removal of a suspension of liquidation, or else the entries "will be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted by the importer of record… ."  19 U.S.C. § 1504(d).  When entries are liquidated pursuant to section 1504(d), the entries are said to have been "deemed liquidated," or liquidated by operation of law.  *Cemex*, 384 F.3d at 1320.

Specifically in *Cemex*, on March 23, 1998—after failing to publish a notice of the amended final results in the Federal Register reflecting the judgment of the trial court—Commerce emailed CBP ambiguous, untimely, and non-public instructions to liquidate the subject entries at the court-ordered final assessment antidumping duty rate of 106.846 percent *ad valorem*.  *Cemex*, 384 F.3d at 1316, 1318, 1321.  Despite the legally deficient instructions, nearly all of the subject

13

entries, except for those at the Port of Nogales, were liquidated at the correct final

assessment rate. *Id*. at 1316-17. But the Port of Nogales did not obtain the

instructions until three years later in March 2001. *Id*. at 1317. Because of the time

that had elapsed, Nogales assumed (incorrectly) that the covered entries at its port

liquidated by operation of law pursuant to 19 U.S.C. § 1504(d) at the "as entered"

cash deposit rate of 56.94 percent *ad valorem*. *Id*.

In order to acknowledge the "deemed liquidations" and to liquidate any

unliquidated covered entries, on April 6, 2001, CBP published a bulletin notice at

the port "indicating that 121 of the Nogales Entries had been deemed liquidated as

of September 23, 1998, and that 19 others had liquidated at 'no change.' All 140

entries were thus liquidated at the rate and amount of duties asserted by the

importer upon entry, 56.94 percent *ad valorem*." *Cemex*, 384 F.3d at 1317.

Although the legally deficient email from Commerce was "ineffective in triggering

the six month deemed liquidation period under section 1504(d)," *id.* at 1321, this

Court ruled that "Customs made an affirmative determination to acknowledge and

implement the deemed liquidation of the Nogales Entries pursuant to Commerce's

March 23, 1998 e-mail." *Id*. at 1323.

As explained throughout our brief, these particular procedural deficiencies,

present in *Cemex*, are simply not present in the *Home Products* litigation.

14

## A. Target's Entries Did Not Deem Liquidate By Operation Of Law Pursuant To 19 U.S.C. § 1504(d)

In a misguided attempt to analogize this action to *Cemex*, Target incorrectly contends that "{a}lso as in this case, there was no question that those entries were deemed liquidated under 19 U.S.C. § 1504(d)[.]" Blue Br. 6. Target is wrong, and repeats this erroneous contention throughout its brief, *see id*. at 2, 3, 4, 6, as it likewise did before the trial court. *See* Appx13-14 ("The court notes that Target often refers to the erroneous liquidations at issue here as 'deemed' liquidations under 19 U.S.C. § 1504(d). However, Home Products I only involved actual liquidations, not deemed liquidations as in Cemex…. Therefore, Plaintiff's arguments regarding deemed liquidations under § 1504(d) are without merit.") (emphasis in original).

As the trial court pointed out, Target's entries never became deemed liquidated, and thus were never subject to the six-month prescriptions of section 1504(d). Rather, in *Home Products*, on December 8, 2016, the trial court dissolved the preliminary injunction in effect and, through its final judgment, ordered CBP to liquidate the relevant entries at a final weighted-average dumping margin of 72.29 percent. Appx2. Unlike in *Cemex*, Commerce then timely and accurately published amended final results in accordance with the final judgment and issued valid, timely, and correct liquidation instructions to CBP. *See* am. final results

15

(Jan. 5, 2017); ECF No. 171-2, CIT Court No. 07-00123 (Message No. 7023304 (Jan. 23, 2017)).  Upon receiving the instructions, CBP then timely and affirmatively liquidated all of the covered entries in March 2017.  *Home Products I*, 405 F. Supp. 3d at 1368, 1371, 1375.  Although CBP accurately liquidated hundreds of entries at the correct rate of 72.29 percent, the agency also erroneously and affirmatively liquidated 224 entries—including 40 of Target's entries—"no change" at the cash deposit antidumping duty rate in effect at the time of entry, which was 9.47 percent.  *Id*.

Because *all* of the entries covered by the *Home Products* final judgment were affirmatively liquidated by CBP less than four months after the trial court dissolved the preliminary injunction and Commerce issued valid instructions, none of the covered entries, including the 224 entries erroneously liquidated "no change" at the deposit rate, remained unliquidated after six months.  Therefore, none of the *Home Products* entries became deemed liquidated by operation of law pursuant to section 1504(d), as Target often incorrectly asserts otherwise.

### B. 19 U.S.C. § 1501 And § 1514(a) Do Not Preclude The Trial Court From Enforcing Its Judgments

Bundled up with Target's assertions regarding *Cemex* is also an argument that the trial court's remedial powers to enforce its judgments are restricted by 19 U.S.C. § 1501 and § 1514.  "We have no doubt that the CIT was disturbed by what

it perceived as an inequity in following the prescriptions of the statute in Section 1501, Section 1504(d) and Section 1514(a).  However, the courts are not free to disregard clear and unambiguous statutory restrictions enacted by Congress.  This is not an equitable matter; it is a matter of law."  Blue Br. 9.  In essence, Target argues that the trial court's Article III remedial powers are bound by the 90-day timeframe for CBP to voluntarily reliquidate under section 1501, such that the court did not have the authority to enforce its own judgment under the finality provision provided in section 1514(a).  Target is wrong.

When discussing sections 1501 and 1514 to support its position, Target ignores the scope and purpose of these provisions.  Section 1501, entitled "Voluntary reliquidations by U.S. Customs and Border Protection," authorizes *CBP* to *voluntarily* reliquidate entries "within ninety days from the date of the original liquidation."  19 U.S.C. § 1501.[2]  By its express terms, section 1501 applies only to liquidations and reliquidations made by CBP under section 1500,

---

[2] 19 U.S.C. § 1501 states, in relevant part, as follows:

> A liquidation made in accordance with section 1500 or 1504 of this title or any reliquidation thereof made in accordance with this section may be reliquidated in any respect by U.S. Customs and Border Protection, notwithstanding the filing of a protest, within ninety days from the date of the original liquidation…

and the limitations imposed upon those liquidations and reliquidations under section 1504.

As the trial court made clear, 19 U.S.C. § 1501 does not restrain the court's authority to enforce its own judgment by ordering CBP to reliquidate beyond section 1501's ninety-day period when the agency inadvertently fails to comply with the trial court's judgment in an initial liquidation, as occurred in *Home Products I. See* Appx15 (Section 1501 "merely limits the time within which Customs may act <u>to voluntarily correct its own mistake</u>. Plaintiff points to no language in the statute or its legislative history to support its argument. The statute on its face does not govern the authority of the Court of International Trade to grant relief from an unlawful liquidation derived from its jurisdiction over the entries underlying an action, as well as its inherent powers as an Article III court.") (emphasis in original); *see also Am. Signature, Inc. v. United States*, 598 F.3d 816, 829-30 (Fed. Cir. 2010) (stating, in an action to correct Commerce's liquidation instructions, that "{w}e cannot agree that Commerce is without a remedy if the ninety-day period elapses without reliquidation,…[as] the deadline is inapplicable if reliquidation is ordered by a court."); *SSAB North American Div. v. U.S. Bureau of Customs and Border Protection,* 571 F. Supp. 2d 1347, 1352 (Ct. Int'l Trade 2008) ("First, § 1501 simply authorizes Customs, in its discretion, to revisit a

18

liquidation within 90 days of the notice.  It does not confer any rights on Plaintiffs and therefore does not constitute a 'remedy' for Plaintiffs that would preclude injunctive relief.").  Simply put, a trial court's ability to enforce its judgments does not expire when the 90-day period for CBP to voluntarily reliquidate elapses.

In an attempt to apply section 1501 beyond its confines, Target cites 2016 testimony from CBP's then-Commissioner, Gil Kerlikowske, at a Congressional hearing.  *See* Blue Br. 11.  Yet the testimony cited by Target merely reiterates the text of section 1501 itself, namely that "…if an importer does not file a protest and the entry is beyond the 90-day voluntary reliquidation period, the liquidation of an entry becomes final and CBP is statutorily barred from changing the liquidation.").  *Id*.  Far from supporting Target's position on section 1501, Commissioner Kerlikowske's testimony describes that, absent a protest, section 1501 limits *CBP* to making *voluntary* reliquidations within 90 days of the original liquidation.

But that is not the case with Target's entries.  The 224 reliquidations at issue in *Home Products* were not made voluntarily by CBP on its own accord pursuant to section 1501.  Rather, CBP was ordered by the *Home Products* trial court to make the reliquidations so that the court's judgment could be properly carried out. Nothing in Commissioner Kerlikowske's testimony suggests that court-ordered reliquidations resulting from countervailing and antidumping duty proceedings

under 19 U.S.C. § 1516a (discussed in Sec. II. C, below) are bound by section 1501. Like the finality constraints imposed upon importers by section 1514 (discussed next), the reliquidation constraints imposed upon CBP by section 1501 neither speak to, nor limit, the trial court's authority to order reliquidation consistent with its judgment.

Target's references to 19 U.S.C. § 1514(a) are similarly unsupported. *See, e.g.,* Blue Br. 8-10, 14-16. Section 1514(a) specifically concerns protests that may be filed against CBP decisions. Section 1514(a) provides that liquidation does not become final and conclusive when a timely protest is filed with CBP, and if applicable, when a court action is commenced in the Court of International Trade to challenge a denied protest.[3]

---

[3] 19 U.S.C. § 1514(a) states, in relevant part here, as follows:

> [A]ny clerical error, mistake of fact, or other inadvertence, whether or not resulting from or contained in an electronic transmission, adverse to the importer, in any entry, liquidation, or reliquidation, and, decisions of the Customs Service…as to…(5) the liquidation or reliquidation of an entry…shall be final and conclusive upon all persons…unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest…is commenced in the United States Court of International Trade…

In *Cemex*, this Court (agreeing with the trial court) concluded that the April 2001 Bulletin Notice represented a "decision" by CBP for the purpose of considering the issue of finality, as the Bulletin Notice was "[m]ore than passive or ministerial, [such that] Customs' actions constitute[d] a 'decision' within the context of section 1514(a)." *Cemex*, 384 F.3d at 1324. In contrast, nothing similar to CBP's posting of the problematic April 2001 Bulletin Notice occurred in *Home Products*. Rather, CBP had liquidated Target's 40 entries timely, but incorrectly, in accordance with Commerce's proper liquidation instructions, and then the *Home Products* trial court—and not CBP on its own initiative—ordered CBP to reliquidate the entries correctly, which it then did.

Moreover, while the purpose and context of section 1514(a) are specific—it is entitled "Protest against decisions of Customs Service"—Target nevertheless maintains that the provision limits the court's inherent power to enforce its own judgments. Blue Br. 9, 14-16. But the provision does not speak to, let alone limit, the trial court's inherent power to enforce its judgments through reliquidation, as circumstances (such as here) warrant. To argue otherwise, as Target does, runs counter to express statutory authority and controlling decisions from this Court, as explained further in the next sections.

21

### C. The Trial Court's Reliquidation Order Effectuated The Terms Of 19 U.S.C. § 1516a And Was Necessary To Protect Its Judgment

Target maintains that "…equity gives the lower court the power to enforce its judgment in a way that is consistent with the law.  But it absolutely does not give the court power to use its equitable powers to disregard the law.  The court's equitable powers could not be used to overrule the statute and the precedent set by this Court in the *Cemex* case."  Blue Br. 15 (emphasis omitted).  Target misses the mark, and fundamentally misunderstands not only the operative statutes, but also *Cemex* and its progeny.  Moreover, by misconstruing and elevating sections 1501 and 1514(a) over a court's remedial powers in this instance, Target disregards 19 U.S.C. § 1516a—the governing statute regarding liquidation of the *Home Products* entries—and the terms of the December 8, 2016 Stipulation For Entry of Judgment in *Home Products* and the court's judgment entering that stipulation.

19 U.S.C. § 1516a provides that court-enjoined entries during the pendency of an action to contest the final results of an applicable antidumping duty rate— such as the entries in *Home Products*— "shall be liquidated in accordance with the final court decision in the action."  19 U.S.C. § 1516a(e)(2).  It necessarily follows that, under section 1516a(e)(2), all of the entries covered by the *Home Products* litigation—including the 224 erroneously liquidated entries—must actually "be liquidated in accordance with the final court decision."  For the terms of section

22

1516a(e)(2) to be heeded, therefore, the 224 entries in question would need to be reliquidated at the final ordered antidumping duty rate of 72.29 percent. *See Cemex*, 384 F.3d at 1323 ("Operating under the mistaken belief that the March 23, 1998 email from Commerce had been timely and valid, Customs chose to recognize the legal fiction of deemed liquidation at the 'as entered' rate rather than apply section 1516a(e)(2) to liquidate the subject entries at the final rate of 106.846 percent *ad valorem*.").

Because the 224 erroneously liquidated entries were not "liquidated in accordance with the final court decision," it was appropriate for the trial court to exercise its remedial powers, and order reliquidation consistent with the final court decision, to effectuate both the court's final judgment and the terms of section 1516a(e)(2).

To that point, unmistakably the Court of International Trade has the statutory authority to issue an injunction to enforce a judgment, as it "is a national court under Article III … with all the necessary remedial powers in law and equity possessed by other federal courts established under Article III…" *Borlem S.A.-Empreedimentos Industriais v. United States*, 913 F.2d 933, 937 (Fed. Cir. 1990) (internal quotations and citations omitted); *see also* 28 U.S.C. § 1585 ("The Court of International Trade shall possess all the powers in law and equity of, or as

23

conferred by statute upon, a district court of the United States."). And it also has the statutory authority to issue an affirmative injunction. *See* 28 U.S.C. § 2643(c)(1) ("…the Court of International Trade may…order any other form of relief that is appropriate in a civil action, including,…injunctions…").

Moreover, as opposed to relief that a court may be statutorily limited to issuing in the first instance in a particular action, a court's inherent authority to enforce its judgments is necessarily broad so that the integrity of a given judgment can be protected as circumstances require. *See Peacock v. Thomas*, 516 U.S. 349 (1996) at 356 ("In defining [the court's inherent power], we have approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments—including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances.") and at 359 ("Ancillary enforcement jurisdiction is, at its core, a creature of necessity.") (citations omitted); *see also United States v. Hanover Ins. Co.*, 82 F.3d 1052, 1054 (Fed. Cir. 1996) (finding that the Court of International Trade "has the inherent power to determine the effect of its judgments and issue injunctions to protect against attempts to attack or evade those judgments."). In fact, "'{w}ithout jurisdiction to enforce a judgment…, the judicial power would be incomplete and entirely inadequate to the

24

purposes for which it was conferred by the Constitution.'" *Heartland By-Prod., Inc. v. United States*, 424 F.3d 1244, 1251 (Fed. Cir. 2005) (quoting *Peacock*, 516 U.S. at 356) (citation omitted).

Thus, by issuing its September 27, 2019 affirmative injunction, which CBP thereafter complied with, the trial court properly exercised its statutory powers (28 U.S.C. §§ 1585 and 2643) to ensure that all of the *Home Products* entries were "liquidated in accordance with the final court decision," as required by 19 U.S.C. § 1516a.

The terms of section 1516a(e)(2) are echoed in the December 8, 2016 Stipulation For Entry of Judgment, which set forth the terms of settlement by the *Home Products* parties, and provided, in part, that "Once the entries are liquidated pursuant to the terms of the lower court's judgment arising from this stipulation, this matter shall be concluded." ECF No. 167, CIT Court No. 07-00123, at ¶4. Further, the trial court's judgment from the same day, which effected the stipulation and proposed judgment submitted by the parties, ordered, in part, as follows:

> ORDERED that the judgment is entered in accordance with the stipulation of settlement by the parties; it is further…

> ORDERED that the injunction enjoining liquidation of the subject merchandise in this action, *see Home*

> *Products International, Inc. v. United States*, Court No.
> 07-00123 (CIT Apr. 18, 2007), ECF No. 11 (prelim. inj.
> order), shall be dissolved, and the covered entries be
> liquidated in accordance with this entry of judgment; and
> it is further…

ECF No. 168, CIT Court No. 07-00123; *see also* Appx2.  Thus, the trial court's

decision to order reliquidation ensured that all of the entries subject to the *Home*

*Products* litigation were indeed liquidated at the agreed-upon and court-ordered

rate of 72.29 percent.

Given that injunctions in antidumping cases are available under 19 U.S.C. §

1516a(c)(2) to maintain the *status quo* so that the trial court's final judgment will

be applied to the appropriate unliquidated entries (some of which may otherwise be

liquidated during the course of litigation) under 19 U.S.C. § 1516a(e), it would

make little sense to allow the court to order reliquidation to enforce an injunction,

but not allow the court to enforce its own judgment in the same manner.  The

*Home Products* court recognized this principle in rejecting the incorrect and

constrictive reading of *Cemex* that Target asserts is binding.  As the trial court

explained in *Home Products I*, it is "difficult to understand the conclusion that

Congress—having provided detailed and comprehensive rights for domestic

interested parties within the trade remedy statutes—somehow intended that those

very parties have no remedy to correct a Customs' error that wipes out years of

litigation vindicating those rights." *Home Products I*, 405 F. Supp. 3d at 1377

(citing *Marbury v. Madison*, 5 U.S. 137, 147 (1803), emphasis omitted).

Indeed, in *Cemex*, this Court tacitly recognized this fundamental principle

when pointing to cases involving liquidations that violated preliminary injunctions

and expressly stated that such cases "*are distinguishable* as…[they] involve[]

liquidations in violation of an injunctive order." *Cemex*, 384 F.3d at 1324 n.13

(emphasis added) (citing *AK Steel Corporation v. United States*, 281 F. Supp. 2d

1318 (Ct. Int'l Trade 2003) and *LG Electronics U.S.A., Inc. v. United States*, 991 F.

Supp. 668 (Ct. Int'l Trade 1997)).

Subsequent to *Cemex*, and relevant here, in *Agro Dutch Indus. Ltd. v. United*

*States,* 589 F.3d 1187, 1192 (Fed. Cir. 2009), which arose from a proceeding to

amend the trial court's judgment, this Court affirmed the trial court's issuance of a

reliquidation order to address CBP's inadvertent liquidation of entries in a manner

inconsistent with an arrangement reached by the parties and the court regarding a

preliminary injunction order.  More specifically, this Court affirmed the authority

of the trial court to essentially revise the terms of a preliminary injunction order

*nunc pro tunc* to correct CBP's inadvertent liquidation of entries just before the

preliminary injunction order took effect (the Government had previously

represented to the parties and the court that such liquidation would not occur).  *Id.*

27

at 1191, 1194.  In affirming the trial court's reliquidation order, this Court weighed the interest of finality against the intent of the parties and the trial court in entering the injunction:

> While finality is an important goal, the interest in finality must give way in the face of a more compelling interest in this case: namely, effecting the intent of the parties and the court to prevent a premature liquidation while judicial review is ongoing.

*Id.* at 1193.

Similar to what occurred in *Agro Dutch*, the trial court in *Home Products* issued a final judgment—thereby effectuating the intent of the parties, as presented in a Stipulation for Entry of Judgment—after years of litigation, and then CBP inadvertently liquidated in a manner inconsistent with that judgment.  The court then issued an affirmative injunction to enforce the terms of its final judgment.  In doing so, the trial court stated that "the principle of finality codified in § 1514 is not a bar to [the court] correcting Customs' errors in liquidating subject entries covered by [a] trade action."  *Home Products I*, 405 F. Supp. 3d at 1377.

In the case at bar, the trial court restated its prior conclusion, while quoting its decision from *Home Products*, as follows:

> It is a matter of basic logic and common sense that Court of International Trade (and the Court of Appeals), not Customs, has the "final" say about entries in a trade action. See 19 U.S.C. § 1516a(e); Home Products I, 43

28

CIT at ___, 403 F. Supp. 3d at 1373 ("When Customs liquidates an entry, the finality considerations of § 1514 always lurk in the background <u>except</u> when the Court of International Trade takes jurisdiction over the entries in an action under § 1516a. <u>See</u> 19 U.S.C. § 1514(b). This is a logical and necessary carve-out from § 1514 because such entries need to be liquidated in accordance with 'the final court decision' pursuant to § 1516a(e), meaning the court, not Customs, necessarily has the final say over the entries.").

Appx16 (emphasis in original).

This Court has often echoed the trial court's conclusion—despite Target's protestations otherwise—that a trial court's authority to order reliquidation to enforce and protect its judgment is not constrained by section 1514(a)'s finality provision and the 90-day period for CBP to voluntarily reliquidate under section 1501. *See Agro Dutch*, 589 F.3d at 1192 ("The trial court's discretion is not limited to the correction of clerical or typographical errors but encompasses the correction of errors needed to comport the order with the original understandings and intent of the court and the parties."); *Shinyei Corp. v. United States*, 355 F.3d 1297, 1312 (Fed. Cir. 2004) (declaring, in an action challenging Commerce's liquidation instructions, that "we decline to find that the statute [imposing finality upon liquidations] as a whole was intended to preclude judicial enforcement of court orders after liquidation."); *Am. Signature,* 598 F.3d at 829-30 ("We cannot agree that Commerce is without a remedy if the ninety-day period elapses without

reliquidation,…[as] the deadline is inapplicable if reliquidation is ordered by a court.").

Accordingly, consistent with 19 U.S.C. § 1516a(e)(2), *Cemex*, and other decisions from this Court, a trial court may order reliquidation to effect the intent of the parties and the court—as reflected in a court order or judgment—and sections 1501 and 1514(a) do not delineate or upend the court's vested remedial powers to do so.

### D. The Trial Court's Holding Is Consistent With The Analysis Of *Cemex*

Target believes that *Cemex* barred the trial court in this action and *Home Products I* from ordering relief.  Blue Br. 15-16.  But in *Cemex*, this Court specifically considered the remedies that may have been available to the domestic petitioner, yet ultimately concluded that such relief was not warranted under the circumstances.  It does not follow from that holding, that *Cemex* stands for the proposition that the trial court in this action and *Home Products I* was prohibited from ordering reliquidation consistent with its prior judgment.  Far from it.

In *Cemex*, this Court ruled that the domestic petitioner Ad Hoc was foreclosed by section 1514(a) from challenging the improper liquidations because, unlike importers, domestic producers do not have protest rights to challenge CBP decisions.  384 F.3d at 1318, 1322-23.  However, section 1514(a) did not

automatically end the Court's inquiry into potential avenues of relief for Ad Hoc,

as this final paragraph from the decision demonstrates:

> This result, while seemingly harsh, was not unavoidable,
> as Ad Hoc should have heeded the repeated warning
> signs. Ad Hoc should have perceived the first sign of
> trouble when Commerce failed to publish the required
> notice of the final duty assessment in the Federal
> Register. In the absence of a Federal Register notice, Ad
> Hoc should have looked for public liquidation
> instructions from Commerce, which never issued.
> Finally, Ad Hoc should have watched for the notice of
> liquidation…, [which was] not posted by Customs until
> [April 2001][,] some three years after the final judgment
> in [1998]…In view of these notable and noticeable
> omissions, Ad Hoc should have moved the Court of
> International Trade to enforce the judgment in 1998,
> rather than in 2003.

*Id.* at 1325.  Notably, the domestic industry in *Cemex* only sought reliquidation

from the trial court in April 2003, which was two years after CBP issued its

liquidation decision in the form of the April 2001 Bulletin Notice, and five years

after the court had issued judgment.  *Id*. at 1319, 1325.  This delay was found to be

significant by both the trial court and this Court when considering the facts

presented in that case.  *See id*. at 1319 ("'Ad Hoc should have pursued whatever

remedies it had to enforce the judgment here promptly.'") (quoting *Cemex, S.A. v.

United States*, 279 F. Supp. 2d 1357, 1363 (Ct. Int'l Trade 2003)).  Consequently,

31

Ad Hoc missed its opportunity for relief by failing to diligently monitor the liquidation process.

These passages undermine Target's argument that *Cemex* forecloses the trial court's exercise of its statutory powers to order reliquidation consistent with its judgment. Blue Br. 15-16. Although the facts did not favor Ad Hoc in *Cemex*, it does not follow that *Cemex* forbids relief in other circumstances where appropriate. Indeed, the above-quoted passages from *Cemex* strongly indicate that if domestic producers, like Ad Hoc, are to avoid the inequity of entries not being liquidated at the correct rate in accordance with a court-ordered judgment, then they should diligently monitor the agencies tasked with executing the trial court's judgment and promptly move the court to enforce the judgment. On that account, despite the roadblock presented to Ad Hoc by the protest remedies of section 1514(a), a path for relief may have been available to Ad Hoc, if only it acted accordingly. But it did not, and the trial court and this Court in *Cemex* both declined to grant Ad Hoc relief.

Such is not the case here. First, as explained above, the *Home Products* court was not statutorily restricted from ordering reliquidation consistent with its final judgment. Indeed, by doing so, the trial court ensured that the directives of 19 U.S.C. § 1516a(e)(2) were adhered to. Further, the underlying facts in *Home*

*Products* informed the court's decision to exercise its statutory authority and order reliquidation. *See Home Products I*, 405 F. Supp. 3d at 1377. As in *Cemex*, the trial court in *Home Products* evaluated the circumstances presented, which led to a different—but just as appropriate—result. Unlike the domestic industry's actions in *Cemex*, the *Home Products* court found that HPI and the Government took reasonable and timely steps to inform the Court of CBP's erroneous liquidations once they were discovered by the investigation conducted by HPI's counsel. *Id*. at 1375-76. The court also observed that Target "remained silent upon receiving a fortuitous windfall when the erroneous liquidations [initially] occurred…" *Id*. at 1376. Thus, the trial court issued an affirmative injunction for CBP to reliquidate the 224 entries consistent with the final judgment. *Id*. at 1376, 1378.

Yet Target challenges the trial court's application of its relief statutes in *Home Products*, 28 U.S.C. §§ 1585 and 2643, and claims that the trial court should shun its statutory authority. But the relief Target ultimately seeks, reversal of the 224 court-ordered reliquidations from four years ago—which at this late stage would "…give rise to [ ] real uncertainty…" by undermining the intent of the parties and the court to resolve the *Home Products* litigation on agreed-upon terms, *Agro Dutch*, 589 F.3d at 1193-94—is predicated on the unsupportable contention that the trial court was forbidden from using its statutory powers to order

33

reliquidation on account of sections 1501 and 1514(a) and *Cemex*. This contention, already considered and rejected by the trial court in this action and *Home Products I*, is likewise properly rejected here.

Finally we note, that despite the above discussion and analysis, Target myopically asserts that "{t}he main purported distinction [with *Cemex*] relied upon below is the fact that Target did not participate in the administrative proceedings that led to the final determination by Commerce.  Appx4-6."  Blue Br. 12.  Not only does this contention minimize the trial court's discussion of *Cemex* in the merits portion of its decision, *see* Appx12-15, but it also leads Target to yet again collaterally attack the *Home Products* court's denial of its motion to intervene. "Under these circumstances it was an abuse of discretion to deny intervention by Target in view of the non-participation by Since Hardware."  Blue Br. 13.  This assertion is irrelevant to the present appeal, especially considering that Target's appeal of *Home Products I* was dismissed for its failure to appeal the denial of its motion to intervene in that case.  *See Home Products II,* 846 Fed. Appx. at 895 ("To ensure that the exceptions to the rule against nonparty appeals remain narrow, we conclude that equity required Target, whose motion to intervene was denied, to appeal and contest the denial of intervention.  As Target failed to follow that

procedure and does not meaningfully defend that choice, we conclude that the

equities do not favor allowing Target's nonparty appeal.").

In sum, the *Home Products* court's issuance of an affirmative injunction to

enforce its judgment was not "flatly contrary" to *Cemex*, as Target alleges.  Blue

Br. 6.  Rather, the procedural facts present in *Home Products* and this action, as

compared to *Cemex*, led to outcomes that were appropriate and justified in the

respective actions, as the trial court properly concluded.

## III.    THE TRIAL COURT PROPERLY DISMISSED THIS ACTION FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

The trial court properly dismissed Target's complaint for failure to state a

claim upon which relief may be granted, entering judgment accordingly.  Appx18-

19.  Target argues that our motion to dismiss was improper and contradicts the path

to challenge the denial of its protest under 19 U.S.C. § 1514 and 28 U.S.C. §

1581(a), as spelled out by this Court in *Home Products II*.[4]  Blue Br. 16-18.

Instead, Target contends that "the government should have filed either a motion for

---

[4] We note that the Court pointed out this path for Target as a result of Target's deficient nonparty appeal of *Home Products I*, in particular Target's failure to appeal and contest the denial of its motion to intervene.  *Home Products II*, 846 Fed. App. at 895.

judgment on the pleadings or for summary judgment after filing an answer." *Id*. at 16.  Target is mistaken.

While we do not dispute that Target was permitted to protest the reliquidation of its 40 entries and challenge the denial of that protest before the Court of International Trade, Target's suit, as the trial court ruled, presented no dispute about material facts, but rather presented only a pure question of law—one that the court had already considered and rejected in *Home Products I*.  Appx11-12.  *See Twombly*, 550 U.S. at 555 (stating that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986), "on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'").

Target's complaint was legally deficient because its entire basis for relief was predicated on the trial court reversing itself.  Essentially, Target's complaint masqueraded as a motion to reconsider *Home Products I*, namely the court's decision that sections 1501 and 1514(a) did not prohibit the court from exercising its vested remedial powers by ordering reliquidation of the 224 erroneously liquidated entries consistent with its judgment, and that *Cemex* did not conflict

36

with or dictate the outcome in *Home Products I*.  Appx25-29.  Because Target's

complaint presents no new factual considerations or legal grounds for relief beyond

those already considered and rejected in *Home Products I*, Target's basis for relief

in the present action is without any legal support.  *See United Pac. Ins. Co.*, 464

F.3d at 1333 (holding that a prior *en banc* decision of the court compels the

conclusion that plaintiff is not entitled to the relief it seeks).

Moreover, in addition to the present suit's renewed attack on *Home Products

I*, Target had already presented argument against reliquidation before the *Home

Products* court.  In the time shortly after the trial court's October 27, 2017 order

directing reliquidation in conformance with its judgment until the court's

September 27, 2019 affirmative injunction to enforce the judgment, Target was

permitted to participate, pursuant to USCIT Rule 71, in supplementary proceedings

concerning the enforcement of the court's judgment.  *Home Products*, 405 F. Supp.

3d at 1374-75; *see also* ECF No. 181, CIT Court No. 07-00123, November 15,

2017 Memorandum and Order ("To afford Target the opportunity to address the

issue of reliquidation, the court will stay the implementation of its October 27th

Order.").  In so participating, Target argued, on the papers, that the trial court could

not enforce its judgment by ordering reliquidation of Target's entries.  *See* ECF

Nos. 173, 176, 177, 184, 192, CIT Court No. 07-00123.  The *Home Products* court

37

considered Target's arguments and rejected them.  Target then appealed the court's

September 27, 2019 decision, but as noted herein, the appeal was dismissed due to

its procedural deficiencies.  *Home Products II*, 846 Fed. Appx. 890.

Target's present action, in essence, revisits the supplemental enforcement

proceedings in *Home Products I* and the relief the trial court ordered to conclude

that litigation.  In particular, Target seeks a refund of the duties that it paid when

CBP reliquidated Target's entries in accordance with the court's affirmative

injunction—relief that the *Home Products* decision foreclosed.  Appx29; *Home*

*Products*, 405 F. Supp. 3d at 1378.  In other words, the ultimate relief Target seeks

in this action has already been sought, considered, and denied.  Nonetheless,

Target, in bringing the suit to challenge its protest, has yet again asked the trial

court to reach a different result than it did in *Home Products*, but for essentially the

same reasons previously presented to the court.

Ultimately, the court's reliquidation order in *Home Products* to enforce its

final judgment, issued after more than a decade of litigation, has been binding,

effected, and recognized by the parties, except by Target, for over four years.  Yet

Target attempts to repurpose its rejected arguments as allegations in a new court

action in an effort to retain a windfall under sections 1501 and 1514(a), regardless

of the trial court's statutory powers to decide otherwise.  Target's efforts must be

38

rejected, as the trial court correctly concluded when dismissing this action for

failure to state a claim upon which relief may be granted.

## CONCLUSION

For these reasons, we respectfully request that this Court affirm the

judgment of the trial court.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

PATRICIA M. McCARTHY
Director

By:    /s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

Of Counsel:              /s/ Alexander Vanderweide
Edward N. Maurer          ALEXANDER VANDERWEIDE
Deputy Assistant Chief Counsel    Senior Trial Counsel
International Trade Litigation     Department of Justice, Civil Division
U.S. Customs & Border Protection  Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Attorneys for Defendant-Appellee
(212) 264-0482 or 9230

December 15, 2023

39

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of December, 2023, a copy of the
foregoing Brief for Defendant-Appellee, United States, was filed electronically.  I
understand that notice of this filing will be sent to all parties by operation of the
Court's electronic filing system.  Parties may access this filing through the Court's
system.

/s/ Alexander Vanderweide
ALEXANDER VANDERWEIDE
Senior Trial Counsel

## **CERTIFICATE OF COMPLIANCE PURSUANT TO FRAP 32**

I, Alexander Vanderweide, a Senior Trial Counsel in the International Trade
Field Office of the Department of Justice, who is responsible for the foregoing
brief, relying upon the Microsoft Word count feature of the word processing
program used to prepare the brief, certify that this brief complies with the type-
volume limitation under Rule 32(a)(7)(B), and contains 8705 words.

/s/ Alexander Vanderweide
ALEXANDER VANDERWEIDE
Senior Trial Counsel
