# United States Court of Appeals for the Federal Circuit

————————————

**TARGET CORPORATION,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

————————————

2023-2274

————————————

Appeal from the United States Court of International Trade in No. 1:21-cv-00162-LMG, Senior Judge Leo M. Gordon.

————————————

Decided: April 21, 2025

————————————

PATRICK D. GILL, Sandler, Travis & Rosenberg, P.A., New York, NY, argued for plaintiff-appellant.

ALEXANDER J. VANDERWEIDE, Commercial Litigation Branch, Civil Division, United States Department of Justice, New York, NY, argued for defendant-appellee. Also represented by BRIAN M. BOYNTON, PATRICIA M. MCCARTHY, JUSTIN REINHART MILLER; ZACHARY SIMMONS, International Trade Litigation, United States Customs and Border Protection, United States Department of Homeland Security, New York, NY.

————————————

Before REYNA, TARANTO, and CHEN, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* CHEN.

Dissenting opinion filed by *Circuit Judge* REYNA.

CHEN, *Circuit Judge*.

Target Corporation (Target) appeals from a United States Court of International Trade (CIT) decision granting the government's motion to dismiss for failure to state a claim. *Target Corp. v. United States*, 647 F. Supp. 3d 1373, 1382 (Ct. Int'l Trade 2023) (*Decision*). In that decision, the CIT granted the motion to dismiss largely for the reasons it articulated in *Home Products International, Inc. v. United States*, 405 F. Supp. 3d 1368 (Ct. Int'l Trade 2019) (*Home Products I*). The CIT's *Home Products I* decision, in turn, interpreted our decision in *Cemex, S.A. v. United States*, 384 F.3d 1314 (Fed. Cir. 2004), *as amended on denial of reh'g and reh'g en banc* (Dec. 14, 2004) (*Cemex*). At bottom, this appeal turns on the applicability of *Cemex* to the present dispute. For the following reasons, we *reverse*.

## I.

### A.

In *Home Products I*, Home Products International, Inc. (HP) challenged the final results issued by the United States Department of Commerce (Commerce) in an administrative review, under 19 U.S.C. § 1675, of imports subject to an antidumping duty order regarding ironing tables from China. Specifically, the company Since Hardware (Guangzhou) Co., Ltd. (Since Hardware)—a Chinese producer and exporter of ironing tables—was assigned an antidumping duty deposit rate of 9.47% for entries of its ironing tables. Following nearly a decade of litigation, the parties settled, and the CIT entered a final judgment directing Commerce, in relevant part, to set the final weighted-average dumping margin at 72.29% and

instructing United States Customs and Border Protection (Customs) to liquidate the relevant entries at that rate.

In March 2017, Customs liquidated many entries at the correct dumping rate, but Customs also "incorrectly liquidated 224 subject entries at a *lower* dumping rate (9.47 percent) than specified in the Judgment (72.29 percent)." *Home Products I*, 405 F. Supp. 3d at 1371.

Under 19 U.S.C. § 1501, Customs could have voluntarily reliquidated those entries "within ninety days from the date of the original liquidation." But Customs did not recognize that its use of the lower rate was erroneous until after that 90-day window expired. *Home Products I*, 405 F. Supp. 3d at 1371. Lacking any "other direct statutory authorization to correct the error," the government filed with the CIT a status report seeking a court order directing Customs to reliquidate those entries in accordance with the final judgment. *Id.* The CIT obliged and entered an order directing that the 224 entries be reliquidated in accordance with its prior final judgment.

But before Customs could reliquidate the entries, Target filed three motions to intervene, to stay implementation of the CIT's reliquidation order, and to reconsider and vacate the reliquidation order. Target imported 40 of the incorrectly liquidated entries and therefore paid less in duties than if those entries had been correctly liquidated. One of Target's arguments was that the government flouted the CIT's procedures because the status report was a "request for a court order overriding the reliquidation time period in 19 U.S.C. § 1501 that should have been made in the form of a motion in accordance with Rule 7(b)." Motion to Reconsider and Vacate the Court's October 27, 2017 Order at 13, *Home Products I*, 405 F. Supp. 3d 1368 (No. 07-CV-00123), ECF No. 177. The CIT appears to have agreed that the status report was procedurally improper, as the CIT sua sponte "repositioned the posture of the litigation as a motion to enforce the Judgment by the

Government and [HP]." *Home Products I*, 405 F. Supp. 3d at 1371. The CIT then stayed its reliquidation order to address the merits of Target's challenge. *Id.*

The CIT denied Target's motions as moot, ordered that Customs' erroneous liquidation was unlawful because it was contrary to the CIT's final judgment, and ordered Customs to promptly reliquidate those 224 entries at the rate specified in the final judgment. *Id.* at 1378.

The CIT acknowledged that "reliquidation to correct any resulting [liquidation] error is neither inevitable nor open-ended because Congress long ago adopted a principle of finality for the liquidation of entries that is now codified primarily in 19 U.S.C. §§ 1514 and 1501." *Id.* at 1372. As discussed, section 1501 gives Customs ninety days to correct liquidation errors. 19 U.S.C. § 1501. Section 1514 has two relevant exceptions to finality of Customs' liquidation decisions. Section 1514(a)(5) has a "protest exception," which provides that, except as provided in subsection (b) of that section, Customs' decisions regarding the liquidation or reliquidation of an entry are "final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section." 19 U.S.C. § 1514(a)(5); *see id.* § 1514(c)(3). And section 1514(b) has a "civil action exception," which similarly provides that Customs' determinations "are final and conclusive upon all persons (including the United States and any officer thereof) unless a civil action contesting a determination listed in section 1516a of this title is commenced." *Id.* § 1514(b).

The CIT did not find that any of those section 1514 exceptions to finality applied. It was also undisputed that Customs did not seek to correct the error within ninety days under 19 U.S.C. § 1501. Nonetheless, the CIT concluded that "the court, not Customs, necessarily has the final say over the entries" because "such entries need to be liquidated in accordance with 'the final court decision'

pursuant § 1516a(e)." *Home Products I*, 405 F. Supp. 3d at 1373. The CIT therefore believed the issue before it was "whether to enforce its judgment through an affirmative injunction, which the court decides by balancing the proper assessment and collection of antidumping duties with the finality of liquidation." *Id.*

The CIT then conducted an equitable analysis and determined that it would order reliquidation of the 224 entries. *Id.* at 1375–76. In the court's view, HP and Customs moved diligently in bringing the issue to the CIT's attention because the status report was filed within 180 days, which is the deadline to file a protest under section 1514. *Id.* The CIT borrowed this 180-day deadline for its analysis even though neither the government nor HP filed a section 1514 protest in this case. Indeed, neither could have done so as section 1514 protests cannot be brought by the government or a domestic producer like HP. *See* 19 U.S.C. § 1514(c)(2); *Cemex*, 384 F.3d at 1322. Nonetheless, the CIT deemed the 180-day period in section 1514 to be a "suitable benchmark." *Home Products I*, 405 F. Supp. 3d at 1374. The CIT also found that the equities did not favor Target, which received a "fortuitous windfall" from the liquidations at the incorrect rate. *Id.* at 1376.

The CIT understood that it "does need to say a few words about *Cemex, S.A. v. United States*, 384 F.3d 1314 (Fed. Cir. 2004)." *Home Products I*, 405 F. Supp. 3d at 1376. In *Cemex*, domestic producers, like HP, "successfully obtained an increase in the amount of antidumping duties calculated by the Department of Commerce . . . from 42.74 percent *ad valorem* to 106.846 percent *ad valorem*." *Cemex*, 384 F.3d at 1315. But "some 140 entries subject to the higher duty were deemed liquidated at the Port of Nogales, Arizona, 'as entered' at the cash deposit rate of 56.94 percent *ad valorem* rather than the final assessment rate of 106.846 percent *ad valorem*." *Id.*

The domestic producers were not aware of this liquidation error for several years, and they then filed a motion to enforce the CIT's judgment sustaining the higher rate. *Id.* at 1317–18. The CIT denied that motion because Customs' "decision to acknowledge the deemed liquidation by posting a bulletin notice at the Port of Nogales became 'final and conclusive upon all persons' under 19 U.S.C. § 1514(a), barring [the domestic producers'] claim." *Id.* at 1315.[1]

Before our court, the domestic producers sought "to reverse the [CIT's] holding that the finality provisions of 19 U.S.C. § 1514(a) preclude all challenges to Customs' subsequent decision to recognize the entries as liquidated." *Cemex*, 384 F.3d at 1315. The domestic producers argued "that under 19 U.S.C. § 1516a(e)(2), Customs was required to liquidate the Nogales Entries in accordance with the 'final court decision in the action' at the final assessment rate of 106.846 percent *ad valorem*." *Id.* at 1321. Thus, according to the domestic producers, "Congress clearly intended that the Court of International Trade exercise judicial review over a domestic industry's challenge to Customs' erroneous liquidation of entries notwithstanding the 'final and conclusive' language in 19 U.S.C. § 1514(a)." *Id.* at 1322.

We disagreed and affirmed the CIT's denial of the motion to enforce the judgment because "19 U.S.C. § 1514(a) rendered    Customs'—albeit    erroneous—decision    to acknowledge the deemed liquidations 'final and conclusive

---

[1]    Because section 1514(a)(5) provides for finality (unless an exception applies) only after an entry has been liquidated or reliquidated, *see* 19 U.S.C. § 1514(a)(5), and there was one unliquidated entry remaining to which section 1514(a)'s finality bar did not apply, the CIT "ordered the liquidation of [that] entry at the 106.846 percent rate required by 19 U.S.C. § 1516a(e)," which provides that entries "shall be liquidated in accordance with the final court decision." *Cemex*, 384 F.3d at 1319; 19 U.S.C. § 1516a(e).

upon all persons.'" *Id.* at 1316.  Though section 1514(a) provides for certain exceptions to finality, none applied. There was no protest filed under section 1514(a).  And though the domestic producers "had challenged the anti-dumping    duty    determinations . . . under    section 1516a(a)(2)(B)(iii), those proceedings had terminated . . . . Section 1514(b), thus, could not act as a bar to the finality provisions of section 1514(a)." *Id.* at 1322.  Section 1516 also could not "prevent finality" under section 1514(a) be-cause "section 1516 contemplates remedies solely prospec-tive in nature, and cannot after-the-fact cure Customs' decisions with respect to liquidation, legal or illegal." *Id.* at 1322–23.  "In sum, section 1514 extends judicial review to domestic producers through sections 1516 and 1516a. As neither exception applies, [the domestic producers are] without recourse to challenge Customs' decision to liqui-date the Nogales Entries at the 'as entered' rate." *Id.* at 1323.

In *Home Products I*, the CIT attempted to distinguish *Cemex* because its "preferred reading of *Cemex* is as a deci-sion to decline to enforce the judgment because too much time had passed following the liquidations, and the domes-tic interested parties had not been vigilant enough for eq-uity to intervene and disturb the finality of those liquidations." 405 F. Supp. 3d at 1376–77.  The CIT recog-nized that "*Cemex* can also admittedly be read more broadly as concluding that domestic interested parties simply have no remedy to correct an erroneous Customs[] liquidation of subject entries covered by a judgment of the U.S. Court of International Trade." *Id.* at 1377.  But the CIT could not "understand the logic or rationale" of our "unfortunate conclusion" that "Congress simply failed to provide a remedy in § 1514 for domestic interested parties to correct Customs' errors in trade cases." *Id.*  In the CIT's view, as "a matter of basic logic and common sense . . . it is the Court of International Trade (and Federal Circuit), *not* Customs, that has the 'final' say about subject entries in

trade actions." *Id.* (citing 19 U.S.C. § 1516a(e)).  The CIT therefore concluded that section 1514 is not a bar to correcting Customs' liquidation errors:

> As explained above, (1) this Court has the power to enforce its judgments, (2) the principle of finality codified [in] § 1514 is not a bar to correcting Customs' errors in liquidating subject entries covered by trade actions, and (3) whether the court corrects the liquidations and enforces the judgment depends on a weighing of equitable factors in each case.

*Id.*

Target appealed the CIT's decision in *Home Products I*. We dismissed the appeal on procedural grounds as Target was not a party to the *Home Products I* proceedings.  *Home Prods. Int'l, Inc. v. United States*, 846 F. App'x 890, 891 (Fed. Cir. 2021).  We noted that "it is undisputed that Target has another, statutorily prescribed, path to redress its grievance without resort to a nonparty appeal." *Id.* at 895.

## B.

That brings us to the present suit.  Customs reliquidated all 224 entries at issue in *Home Products I*, including Target's 40 entries. *Decision*, 647 F. Supp. 3d at 1377.  Target paid the reliquidated amounts for its entries and protested the reliquidations. *Id.*  Customs denied the protest, and Target challenged that denial in the CIT. *Id.* at 1378.  Target's complaint argued that the CIT's *Home Products I* decision to order reliquidation was contrary to *Cemex* and that the CIT cannot use its equitable powers to ignore a statutory prohibition and the binding precedent of *Cemex*. *Id.* at 1380.

The government filed a motion to dismiss for failure to state a claim under CIT Rule 12(b)(6).  The CIT granted that motion, noting that it contained only questions of law about the CIT's authority "to order reliquidation

considered in conjunction with certain statutory provisions." *Id.* at 1379–80. The CIT rejected Target's arguments largely for the reasons it already set forth in *Home Products I*.[2] The CIT also emphasized that reading *Cemex* as governing the *Home Products I* dispute "would elevate the principle of finality found in § 1514 over the inherent power of the Court of International Trade under Article III of the United States Constitution." *Id.* at 1381.

Target appeals from the CIT's grant of a motion to dismiss. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

## II.

"This court reviews the Court of International Trade's decision to grant the Government's motion to dismiss *de novo* as a question of law." *Juice Farms, Inc. v. United States*, 68 F.3d 1344, 1345 (Fed. Cir. 1995).

This case is governed by *Cemex*, and the CIT erred by concluding otherwise. In *Cemex*, domestic producers sought to have entries reliquidated at the rate prescribed by the CIT's judgment after Customs mistakenly liquidated those entries at a lower rate. The CIT denied a motion to enforce the judgment, and we affirmed because the liquidations became "final and conclusive upon all persons" under 19 U.S.C. § 1514(a). *Cemex*, 384 F.3d at 1315–16. We agreed with the CIT "that Customs' decision to acknowledge that liquidation, deemed or otherwise, had occurred falls within the purview of section 1514(a) and is, therefore, 'final and conclusive upon *all* persons.'" *Id.* at 1323. It mattered not that the liquidation was contrary to the rate set in the CIT's judgment because even an "admittedly erroneous decision to liquidate falls within the ambit

---

<sup>2</sup>    The same judge presided over both *Home Products I* and the present case.

of section 1514(a)(5), which shields such decisions from challenge, without regard for their legality." *Id.* at 1324.

Here too, a domestic producer and the government sought to have entries reliquidated at the rate prescribed by the CIT's judgment after Customs mistakenly liquidated those entries at a lower rate. Though the government initially filed a status report seeking the reliquidation order, the CIT "repositioned the posture of the litigation as a motion to enforce the Judgment by the Government and Plaintiff." *Home Products I*, 405 F. Supp. 3d at 1371. Given the nearly identical factual predicates, *Cemex* governs.

The CIT recognized that "*Cemex* can also admittedly be read more broadly as concluding that domestic interested parties simply have no remedy to correct an erroneous Customs[] liquidation of subject entries covered by a judgment of the U.S. Court of International Trade." *Id.* at 1377. Yet both the CIT and the government on appeal attempt to distinguish *Cemex* by transforming it into an equitable decision. To do so, they rely on the opinion's final observations immediately before the "Conclusion" heading:

> This result, while seemingly harsh, was not unavoidable, as [the domestic producers] should have heeded the repeated warning signs. [The domestic producers] should have perceived the first sign of trouble when Commerce failed to publish the required notice of the final duty assessment in the Federal Register. In the absence of a Federal Register notice, [the domestic producers] should have looked for public liquidation instructions from Commerce, which never issued. Finally, [the domestic producers] should have watched for the notice of liquidation at the Port of Nogales, not posted by Customs until some three years after the final judgment . . . . In view of these notable and noticeable omissions, [the domestic producers] should

have moved the Court of International Trade to en-
force the judgment in 1998, rather than in 2003.
Here, where Congress declined to give domestic
producers protest rights, monitoring the enforce-
ment of its court judgment fell upon [the domestic
producers].  Unfair as that may seem, the proper
forum for remedying the harshness of the statute
is Congress, not this court.

*Cemex*, 384 F.3d at 1325.

Specifically, because in *Cemex* we said that the domes-
tic producers "should have moved the Court of Interna-
tional Trade to enforce the judgment in 1998, rather than
in 2003," *id.*, the CIT's "preferred reading of *Cemex* is as a
decision to decline to enforce the judgment because too
much time had passed following the liquidations, and the
domestic interested parties had not been vigilant enough
for equity to intervene and disturb the finality of those liq-
uidations." *Home Products I*, 405 F. Supp. 3d at 1376.  The
CIT's preferred reading is problematic for at least two rea-
sons.

For starters, the CIT's reading ignores the whole point
of the *Cemex* opinion.  The *Cemex* court expressly noted
that it was reviewing the CIT's statutory interpretation.
*Cemex*, 384 F.3d at 1319.  The court then spent several
pages interpreting the applicable statutes—19 U.S.C.
§§ 1501, 1504, 1514, 1516, 1516a—and applying those stat-
utes to the facts of the case.  *Id.* at 1319–25.  Ultimately,
the *Cemex* court affirmed "the trial court's holding that the
finality provisions of 19 U.S.C. § 1514(a) preclude judicial
review of Customs' [liquidation] decision" unless certain
codified exceptions apply, and rejected the domestic pro-
ducers' argument that even though none of those codified
exceptions applied, Customs was required, under 19 U.S.C.
§ 1516a(e)(2), to upend that finality and liquidate the en-
tries "in accordance with 'the final court decision in the ac-
tion.'"  *Id.* at 1321 (quoting 19 U.S.C. § 1516a(e)(2)).

Nowhere does the *Cemex* opinion suggest that it was an equitable decision to decline to enforce the judgment based on principles of fairness. The CIT reached that conclusion by overlooking the *Cemex* opinion's exhaustive statutory analysis and instead homing in on a few lines at the end of the opinion. We reject the CIT's blinkered reading of *Cemex* as an equitable opinion.

In any event, the paragraph from *Cemex* that the CIT and the government rely on does not mean what they suggest it does. In that paragraph, the court explained that the domestic producers could have (1) moved to enforce the judgment before the entries were liquidated or (2) notified Customs of its mistake within ninety days. In the first scenario, section 1514's finality bar would not apply because the entries were not liquidated. Indeed, the CIT in *Cemex* agreed to enforce its judgment for one entry that remained unliquidated under this exact rationale. *See Cemex*, 384 F.3d at 1319; *supra* note 1. And in the second scenario, Customs could have voluntarily ordered reliquidation under 19 U.S.C. § 1501 if it was made aware of the mistake within ninety days. Contrary to the CIT and the government's position, there is no indication that the *Cemex* court meant that section 1514's finality bar could be circumvented, outside of the statutorily prescribed pathways, so long as the domestic producer acted more quickly.

Our precedent supports this understanding of *Cemex*. We have explained that if "the error was in Customs' liquidation of the subject entries despite correct instructions," then the "appropriate avenue for relief would be under 19 U.S.C. § 1514." *Shinyei Corp. of Am. v. United States*, 355 F.3d 1297, 1302 n.2 (Fed. Cir. 2004). And "[w]ithout a timely protest," which did not occur in our case, "all liquidations become final and conclusive under 19 U.S.C. § 1514." *Juice Farms*, 68 F.3d at 1346. Thus, after an entry has been liquidated, section 1514 provides a finality bar that is subject to certain enumerated limitations that are not applicable here.

The CIT also reasoned that allowing *Cemex* to govern here would be "misplaced" as it "would elevate the principle of finality in § 1514 over the inherent power of the Court of International Trade under Article III of the United States Constitution." *Decision*, 647 F. Supp. 3d at 1381. This position is incorrect for two reasons.

First, "[t]he exercise of the inherent power of lower federal courts *can* be limited by statute and rule, for these courts were created by act of Congress." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991) (cleaned up) (emphasis added). Compliance with such limits is part of the duty to exercise inherent powers "with great caution." *Id.* at 43; *see id.* at 44. Here, Congress has carefully crafted a statutory scheme that provides for finality. Within that scheme, Congress has also codified specific avenues that may be used to upend section 1514's finality—including protests filed under section 1514(a), civil actions filed under section 1514(b), and Customs' authority under section 1501(a). But none of those pathways were utilized in this case. Rather, the CIT attempted to craft its own path, which it viewed as a "logical and necessary carve-out from § 1514." *Decision*, 647 F. Supp. 3d at 1382. No matter how well-intentioned the CIT's efforts were, it is not the CIT's role to use inherent powers to override limits set by Congress's carefully crafted statutory scheme as recognized by binding precedent. Rather, "the proper forum for remedying the harshness of the statute is Congress, not this court" or the CIT. *Cemex*, 384 F.3d at 1325.

Second, and relatedly, the CIT's decision not to adhere to the particularized choices Congress made as to finality for Customs' decisions rests, at bottom, on the CIT's view that it was equitable to depart from those choices. "Finality principles would become meaningless if an adversarially-determined issue were final only if the equities were against revising it." *Arizona v. California*, 460 U.S. 605, 626 (1983), *decision supplemented,* 466 U.S. 144 (1984). Of course, "'we do not lightly assume that Congress has

intended to depart from established principles' such as the scope of a court's inherent power." *Chambers*, 501 U.S. at 47 (citation omitted). But, as discussed, Congress has carefully crafted a statutory scheme that specifically articulates grounds for finality and certain exceptions to finality.

At oral argument, the government spent most of its time arguing that section 1514(a) did not apply because there was no "decision" by Customs. *See, e.g.*, Oral Arg. at 15:52–16:45 (available at https://oralarguments.cafc.us courts.gov/default.aspx?fl=23-2274_12062024.mp3). This argument is forfeited as it was not raised in the government's brief. *See id.* at 22:52–23:16; *DDR Holdings, LLC v. Priceline.com LLC*, 122 F.4th 911, 918 (Fed. Cir. 2024); *SEKRI, Inc. v. United States*, 34 F.4th 1063, 1071 n.9 (Fed. Cir. 2022).

In its briefing, the government relies on *Agro Dutch Industries Ltd. v. United States*, 589 F.3d 1187 (Fed. Cir. 2009), to support its argument that "a trial court may order reliquidation to effect the intent of the parties and the court—as reflected in a court order or judgment—and sections 1501 and 1514(a) do not delineate or upend the court's vested remedial powers to do so." Appellee's Br. 30. The government, we conclude, gives too broad an effect to *Agro*, which involved a liquidation that had occurred even though the parties agreed to a preliminary injunction designed to preclude any liquidation from taking place so as to ensure that litigation over the merits could continue. *Agro* cannot be read, without running afoul of *Cemex*, to cover the present case, where the liquidation occurred, and was allowed to occur, after a final judgment on the merits had been reached.

In the *Agro* case, a foreign producer sought review of Commerce's determination of an antidumping duty rate for certain preserved mushrooms from India. *Agro Dutch*, 589 F.3d at 1189. Before the CIT, the government and the foreign producer agreed that a preliminary injunction under

19 U.S.C. § 1516a(c)(2) was appropriate "to prevent liquidation of [the foreign producer's] covered entries during the pendency of the action." *Id.* The CIT ordered the injunction, which "was to become effective five days after service on particular Commerce and Customs officials." *Id.* "According to the government, which requested the five-day delay in the effective date of the injunction, the purpose of the delay was to avoid 'an inadvertent violation' of the injunction by 'ensuring that the appropriate Government officials receive notice' and by 'providing the Government with the time needed to keep the entries from being . . . liquidated.'" *Id.* After the injunction was entered but before the effective date, Customs liquidated nearly all of the foreign producer's entries. *Id.* Commerce then redetermined the correct antidumping duty rate, and the CIT amended the effective date of the injunction and ordered the entries to be reliquidated at the redetermined rate. *Id.* at 1190.

Before us, the government argued that the CIT lacked jurisdiction over the foreign producer's claims concerning the entries liquidated before the injunction's effective date because, in the government's view, Customs' liquidation of those entries mooted the foreign producer's challenge to Commerce's antidumping duty rate determination for those liquidated entries. *Id.* Given that purported lack of jurisdiction, the government also contended that the CIT was powerless to order reliquidation or to amend the injunction. *Id.* We recognized a "general rule" that "liquidation moots a party's claims pertaining to the liquidated entries." *Id.* But we decided that "when liquidation violates an injunction, not only does the trial court retain jurisdiction, but a broad array of remedies (including reliquidation) is available to the court to rectify the unlawful liquidation." *Id.* at 1192 (citing *AK Steel Corp. v. United States,* 281 F. Supp. 2d 1318, 1323 (Ct. Int'l Trade 2003); *LG Elecs. U.S.A., Inc. v. United States,* 991 F. Supp. 668, 675 (Ct. Int'l Trade 1997)). The CIT retained jurisdiction in that case because "[a]s a general matter, a court of equity

may exercise its sound discretion to modify an injunctive order when modification is necessary to achieve the order's intended purpose and does not otherwise result in prejudice to a party." *Id.* In *Agro Dutch*, "it was the purpose of the injunction and the understanding and intent of all the parties to suspend liquidation pending a decision on the merits of [the foreign producer's] challenge." *Id.* Indeed, the five-day grace period was "added only to ensure against subjecting Customs officials to contempt sanctions for an inadvertent liquidation. It was not intended to give the government free rein to liquidate the subject entries before the injunction took effect." *Id.* at 1193.

*Agro Dutch* does not help the government's case in the present appeal because *Agro Dutch* dealt with a preliminary injunction, agreed to in order to preserve the ability to reach the merits, whereas the present dispute involves a final judgment. The *Cemex* court already addressed this distinction. In finding that Customs' "admittedly erroneous decision to liquidate falls within the ambit of section 1514(a)(5), which shields such decisions from challenge," the *Cemex* court explicitly distinguished *AK Steel Corporation* and *LG Electronics*—the same cases cited in *Agro Dutch*—because "both involved liquidations in violation of a[] [preliminary] injunctive order." *Cemex*, 384 F.3d at 1324 n.13. Thus, the *Cemex* court recognized that it was improper to upset section 1514's finality (other than through the statutorily codified exceptions) by modifying a final judgment while also recognizing that modifying a preliminary injunction presents a different issue. Indeed, if anything, *Agro Dutch* supports our decision and the *Cemex* court's opinion because *Agro Dutch* recognized a "general rule" that "liquidation moots a party's claims pertaining to the liquidated entries." 589 F.3d at 1190. At bottom, *Agro Dutch* did not, and could not, overrule our prior holding in *Cemex*.

### III.

We have considered the parties' remaining arguments and do not find them persuasive. For the foregoing reasons, we reverse the CIT's grant of the motion to dismiss.

**REVERSED**

# United States Court of Appeals for the Federal Circuit

―――――――――――――――

**TARGET CORPORATION,**
*Plaintiff-Appellant* v.

**UNITED STATES,**
*Defendant-Appellee*

―――――――――――――――

2023-2274

―――――――――――――――

Appeal from the United States Court of International Trade in No. 1:21-cv-00162-LMG, Senior Judge Leo M. Gordon.

―――――――――――――――

REYNA, *Circuit Judge*, dissenting.

The majority holds that the United States Court of International Trade ("CIT") erred in dismissing Target Corporation's ("Target") action for failure to state a claim under CIT Rule 12(b)(6). Maj. Op. 2.

The majority opinion is incorrect in at least three important respects. First, the majority rests upon a mistaken belief that this appeal is controlled by our decision in *Cemex, S.A. v. United States*, 384 F.3d 1314 (Fed. Cir. 2004). Second, the majority's analysis evidences a misapprehension of the protest procedures administered by U.S. Customs and Border Protection ("Customs"). And third, the majority limits the CIT's authority to enforce its judgments to a level that is inferior to the full authority vested in and

exercised by U.S. federal district courts under Article III of the U.S. Constitution.

For these and other reasons set out below, I dissent.

## I

Target and the majority purport that similarities between this case and *Cemex* render the latter binding precedent. Target asserts that the CIT's final order reliquidating Target's entries at a higher rate is "illegal, null, and void," and that it is "an *ultra vires* act" that is contrary to our decision in *Cemex*. Appellant Br. 4. Target heavily relies on its claims that *Cemex* is dispositive in this case and suggests that, on that basis, the CIT's decision in *Home Prods. Int'l, Inc. v. United States*, 405 F. Supp. 3d 1368, 1378 (Ct. Int'l Trade 2019) ("*Home Products I*") is incorrect, arguing the CIT's decision is inconsistent with our ruling in *Home Prods. Int'l, Inc. v. United States*, 846 F. App'x 890, 895 (Fed. Cir. 2021) ("*Home Products II*"). *See, e.g.*, Appellant Br. 2, 12.

Although *Cemex* offers good instruction for understanding this appeal, it is not controlling. In *Cemex*, we examined circumstances that would potentially allow the CIT to reach an equitable decision of whether "to enforce [a] judgment based on principles of fairness." Maj. Op. 12. Unlike here, however, we found those circumstances wanting. *Cemex*, 384 F.3d at 1320–25. In particular, the *Cemex* court evaluated equitable considerations such as notice, timeliness, and prejudice to the parties. *Id.* We affirmed the CIT's decision not to grant equitable relief. *Id.* at 1325. But we did not hold, as Target suggests, that the CIT lacked authority to grant such relief.

In *Cemex*, we first grappled with whether a notice of liquidation was sufficient to trigger the six-month *deemed* liquidation period under 19 U.S.C. § 1504(d). *Cemex*, 384 F.3d at 1320–21. We affirmed the CIT without reaching

the complete interplay between 19 U.S.C. § 1514(a) and 1514(b). *Id.* at 1322–23. Stated differently, *Cemex* did not decide the precise issues we address in this appeal, including the CIT issuing an affirmative injunction while actively invoking its jurisdiction under 19 U.S.C. § 1516a—a finality exception under section 1514(b), as discussed below. *Infra* Section II.

With respect to timeliness, the *Cemex* court noted that the appellant should have moved the CIT to enforce its judgment five years earlier than it did, suggesting that equitable relief may be available in instances involving shorter periods of time, such as the one month involved in this case versus the five-year delay involved in *Cemex*.[1] *Cemex*, 384 F.3d at 1325. The court affirmed the CIT's finding that "[e]nforcement at [that] date would prejudice other parties by disrupting finality." *Id.* at 1319. These are equitable interests.

The court in *Cemex* also affirmed the CIT's finding that the appellant's lack of diligence in protecting its interests weighed in favor of not disturbing the finality provision in section 1514(a). *Id.* at 1325. But in this case, the CIT found that both Home Products—the affected domestic producer—and the government acted swiftly to correct Customs' reliquidation error while Target, who had knowledge of the error, remained silent in the face of the benefit it stood to gain because of Customs' mistake. *Home Products I*, 405 F. Supp. 3d at 1375–76.

Finally, Target and the majority reason that *Cemex* requires us to hold that, pursuant to the finality provision of section 1514(a), the CIT is divested of discretion to enforce its judgment via an order of reliquidation. As

---

[1]    Here, the government alerted the CIT within one month after discovering its liquidation error. J.A. 2–3; Appellee Br. 4–5.

demonstrated below, this sweeping edict is incorrect. *Infra* Sections II, III.

## II

The majority recognizes that finality under section 1514 is not absolute and it may be delayed or circumvented under various exceptions, including when (1) Customs exercises its authority under section 1501, (2) a protest is filed under section 1514(a), or (3) a civil action is filed under section 1514(b). Maj. Op. 13. The majority faults the CIT for "attempt[ing] to craft its own path" because "none of those pathways were utilized in this case." Maj. Op. 13. I disagree. I would rule that the CIT has clearly and thoroughly articulated its authority to issue an affirmative injunction in this case. And these statutes do not prohibit its ability to do so.

For example, section 1501 is directed to "[v]oluntary reliquidations" by Customs. 19 U.S.C. § 1501.[2] This statute enables Customs to reliquidate for any reason "within ninety days from the date of the original liquidation." *Id.* It provides Customs the ability to correct its own liquidation errors during this timeframe. Nothing within the statutory text, however, limits the CIT's authority to order

---

[2]    Section 1501 provides, in relevant part, that:

A liquidation made in accordance with section 1500 or 1504 of this title or any reliquidation thereof made in accordance with this section may be reliquidated in any respect by U.S. Customs and Border Protection, notwithstanding the filing of a protest, within ninety days from the date of the original liquidation[.]

reliquidation outside this proscribed period, nor does *Cemex* stand for this proposition.[3]

Like section 1501, section 1514(a) also does not limit the CIT's authority to order reliquidation consistent with its final judgments. On its face, section 1514(a) addresses two categories of Customs' decisions that are "final and conclusive upon all persons[.]" 19 U.S.C. § 1514(a). The first category applies to clerical errors or mistakes that are "adverse to the importer." *Id.* The second category includes various types of decisions by Customs, including decisions concerning liquidation or reliquidation of an entry. *Id.* at § 1514(a)(5).

The first category clearly does not apply here. That is, Customs' error in liquidating the two hundred and twenty-four subject entries at a lower dumping rate (9.47 percent *ad valorem*) than what was specified in the CIT's final judgment (72.29 percent *ad valorem*) did not adversely impact Target. *Home Products I*, 405 F. Supp. 3d at 1371. Rather, as this court previously recognized, Target stood to receive "a windfall from Customs' failure to properly implement [the CIT's] order." *Home Products II*, 846 F. App'x at 895 n.1. In fact, Target remained silent upon discovering the error, while the government and Home Products sought to promptly correct it. *Home Products I*, 405 F. Supp. 3d at 1376. And the CIT appropriately weighed such equitable considerations in its decision. *Id.* (agreeing "the equities do not favor Target" when it "remained silent upon receiving a fortuitous windfall when the erroneous liquidations [initially] occurred[.]"). Accordingly, the CIT's judgment ordering reliquidation is not contrary to this aspect of section 1514(a).

_____

[3]   The government correctly contends that, because the entries in question involve "actual" liquidations, not "deemed" liquidations under section 1504(d) like those in *Cemex*, section 1504(d) does not apply. Appellee Br. 15–16.

The CIT's judgment is also consistent with the second category of Customs' liquidation or reliquidation decisions. Namely, section 1514(a) is subject to the exception set forth in subsection 1514(b), among others.  19 U.S.C. § 1514(a). Subsection 1514(b) provides that Customs' decisions are:

> [F]inal and conclusive upon all persons (including the United States and any officer thereof) *unless a civil action contesting a determination listed in section 1516a of this title is commenced in the United States Court of International Trade*[.]

19 U.S.C. § 1514(b) (emphasis added).

In other words, finality is estopped when a lawsuit challenging one of the decisions listed in section 1516a is filed within the CIT.  19 U.S.C. § 1516a; *see also* Maj. Op. 12.  Section 1516a governs judicial review of Commerce's determinations in countervailing and antidumping duty proceedings.  19 U.S.C. § 1516a.  This statute provides that once the CIT or this court engages in such a review then any entries, whose liquidation was previously enjoined during those proceedings, "shall be liquidated in accordance with the final court decision in the action."  19 U.S.C. § 1516a(e)(2).

It is undisputed that Commerce's antidumping rate in the present appeal was properly challenged before the CIT. J.A. 2.  The CIT assumed jurisdiction under section 1516a, thereby invoking an exception to the finality considerations of sections 1514(a) and (b).  *See* 19 U.S.C. §§ 1514(a), (b). As a result, the CIT had jurisdiction to order reliquidation to correct Customs' error "in accordance" with its final judgment under section 1516a(e)(2).  Notably, Target does not challenge this jurisdiction in its briefing.

### III

The majority opinion limits the authority of the CIT to enforce its judgments relative to some of the most critical

aspects of U.S. trade law: liquidation, suspension of liquidation, and reliquidation of import entries subject to antidumping duties.   This outcome is contrary to the congressional purpose and intent to empower the CIT with full Article III authority to enforce its judgments.

Congress established the CIT under Article III of the Constitution of the United States.  28 U.S.C. § 251(a).  In so doing, it expressed an intent to grant it "all the powers in law and equity of, or as conferred by statute, upon a district court of the United States."  28 U.S.C. § 1585; *see also* Customs Courts Act of 1980: Hearing on H.R. 6394 Before the H. Comm. on the Judiciary, 96th Cong. 7–8 (1980) (statement of Sen. Dennis DeConcini).

In *Home Products I*, the CIT explained that it has the authority to order various forms of relief, as necessary, under 28 U.S.C. § 2643(c)(1).  *Home Products I*, 405 F. Supp. 3d at 1372.  More specifically, section 2643(c)(1) provides that the CIT may "***order any other form of relief that is appropriate in a civil action***, including, but not limited to, declaratory judgments, orders of remand, injunctions, and writs of mandamus and prohibition."  *Id.* (emphasis added).  This statute authorizes the CIT to enforce its own judgments through *any* appropriate avenues, which would include an affirmative injunction.  I agree with the CIT that section 2643(c)(1) gives it the authority to enforce its judgments in the form of reliquidation.

To its credit, the CIT recognizes that the grant of an affirmative injunction (e.g., a reliquidation order) is naturally at odds with the public policy interests at stake under section 1514, such as the "stability and predictability of the finality of liquidation."  *Home Products I*, 405 F. Supp. 3d at 1373–74.  Against this backdrop, the CIT explained that it is not compelled to reliquidate where it finds that the public policy considerations tip in favor of maintaining the finality of Customs' liquidation—even when the liquidation was erroneous.   When the CIT applied the balancing

factors to this appeal, it determined that its section 1516a jurisdiction to grant an affirmative injunction outweighed the public's interests in finality under section 1514 in this case. *Home Products I*, 405 F. Supp. 3d at 1375–78.

Target and the majority omit any discussion of the CIT's authority to grant injunctive relief under section 2643(c)(1).[4] Target fails to meaningfully address the CIT's authority to "order any . . . form of relief that is appropriate in a civil action." 28 U.S.C. § 2643(c)(1). Target similarly omits any substantive discussion of the exception to the finality provision of section 1514(b) for actions brought under section 1516a. These statutes weigh in favor of the CIT's use of an affirmative injunction to enforce its judgment. Because I would affirm the CIT's use of its discretionary power to enforce its judgment through an affirmative injunction in the form of a reliquidation order, I would affirm the CIT's dismissal of Target's action for failure to state a cause of action.

For the foregoing reasons, I respectfully dissent.

---

[4] In *Home Products I*, the CIT decided to "enforce its judgment through an affirmative injunction" in the form of a reliquidation order. *Home Products I*, 405 F. Supp. 3d at 1373; J.A. 16.